# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| B.E. TECHNOLOGY, L.L.C., | | |
| Plaintiff, | | Civil Action No. 20-622-GBW |
| v. | | |
| GOOGLE LLC, | | |
| Defendant. | | |

Stephen B. Brauerman, Ronald P. Golden III, BAYARD, P.A., Wilmington, Delaware; Paul J. Skiermont, Jaime K. Olin, Kevin P. Potere, Alexander E. Gasser, Todd A. Martin, SKIERMONT DERBY LLP, Dallas, Texas; Mieke K. Malmberg, SKIERMONT DERBY LLP, Los Angeles, California.

*Counsel for Plaintiff*

Brian P. Egan, Cameron P. Clark, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, Delaware; Robert A. Van Nest, Eugene M. Paige, Ryan K. Wong, David J. Rosen, Ryan M. Kent, Kristin Hucek, Vishesh Narayen, Taylor Reeves, Michael K. Deamer, KEKER, VAN NEST & PETERS LLP, San Francisco, California; Matthias A. Kamber, Robert Laurenzi, Kelsey McQuilkin, PAUL HASTINGS, LLP, San Francisco, California; Andrea Pallios Roberts, Joshua Yin, PAUL HASTINGS, LLP, Palo Alto, California.

*Counsel for Defendant*

## MEMORANDUM OPINION

April 16, 2026
Wilmington, Delaware

GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE

Plaintiff B.E. Technology, L.L.C. ("B.E." or "Plaintiff") initially brought this patent infringement action asserting infringement by Defendant Google LLC ("Google" or "Defendant") of three patents: United States Patent Nos. 8,549,410 (the "'410 Patent"), 8,549,411 (the "'411 Patent"), and 8,769,440 (the "'440 Patent"). The only claim currently asserted is Claim 25 of the '440 Patent (the "Asserted Claim").

Now pending before the Court are the following motions:

(1)    Plaintiff's Motion for Summary Judgment of No Invalidity Pursuant to "Step One" of 35 U.S.C. § 101 ("Plaintiff's First Motion for Summary Judgment") (D.I. 259), which has been fully briefed (D.I. 261; D.I. 288; D.I. 315);

(2)    Plaintiff's Motion for Summary Judgment of No Invalidity in View of the Infoseek System ("Plaintiff's Second Motion for Summary Judgment") (D.I. 263), which has been fully briefed (D.I. 264; D.I. 291; D.I. 317);

(3)    Defendant's Motion for Summary Judgment Based on Patent Ineligibility Under 35 U.S.C. § 101 ("Defendant's First Motion for Summary Judgment") (D.I. 246), which has been fully briefed (D.I. 247; D.I. 293; D.I. 312);

(4)    Defendant's Motion for Summary Judgment No. 2: Non-Infringement Based on Prosecution Disclaimer ("Defendant's Second Motion for Summary Judgment") (D.I. 250), which has been fully briefed (D.I. 251; D.I. 297; D.I. 314); and

(5)    Defendant's Motion for Leave to File a Sur-Reply in Support of its Opposition to Plaintiff's First Motion for Summary Judgment ("Defendant's Motion for Leave") (D.I. 330), which has been fully briefed (D.I. 330; D.I. 334; D.I. 335).

For the reasons set forth below, the Court DENIES Plaintiff's First and Second Motions for Summary Judgment (D.I. 259; D.I. 263) and GRANTS Defendant's First Motion for Summary Judgment (D.I. 246). Defendant's Second Motion for Summary Judgment (D.I. 250) and Motion for Leave (D.I. 330) are DENIED-AS-MOOT.

## I.    BACKGROUND

### A.    The '440 Patent

The '440 Patent is titled "Method of Reactive Targeted Advertising." The '440 Patent is generally directed to "a method of reactive targeted advertising [that] provides for display of advertising, via the internet, to computers of users." '440 Patent at Abstract. The Asserted Claim, Claim 25, depends from Claim 1. The relevant claim language is as follows:

1. A method comprising:

> permitting a computer user to access one or more servers via a network;
>
> transferring a copy of software to a computer associated with the computer user, the software being configured to run on the computer to display advertising content and record computer usage information associated with utilization of the computer, wherein the computer usage information includes data regarding one or more programs run on the computer;
>
> determining a unique identifier associated with the computer, wherein the identifier uniquely identifies information sent from the computer to the one or more servers;
>
> selecting an advertisement to be displayed on the computer, the selection based at least on information associated with the unique identifier identifying the computer;
>
> receiving a request for an advertisement from the computer; and
>
> providing the selected advertisement for display on the computer in response to the request.

2

25. The method of claim 1, further comprising the step of providing reactive targeting of advertising to the user in real time by selecting and presenting an advertisement.

'440 Patent at Claims 1, 25. The Court has construed the following terms of the '440 Patent:

| Claim No. | Claim Term | The Court's Construction |
|---|---|---|
| Claim 1, Claim 25 | computer | "an apparatus having a processing device that is capable of executing instructions, including devices such as personal computers, laptop computers, and personal digital assistants, as well as set top television boxes, televisions, radios, portable telephones, and other such devices having a processing capability" |
| Claim 1 | Computer usage information | "data concerning a person's use of a computer, including such things as what programs they run, what information resources they access, what time of day or days of the week they use the computer, and so forth" |
| Claim 1 | Network | "a system having at least two computers in communicable connection, including intranets, personal networks, virtual private networks, and global public networks such as the Internet" |
| Claim 1 | Server | "a computer on a network that stores information and that answers requests for information" |
| Claim 25 | Real time | Not indefinite; plain and ordinary meaning which is "at the time of user interaction or immediately following:" |

D.I. 104 at 2; D.I. 103 (accompanying Memorandum Opinion). During claim construction, only the "real time" term was disputed. D.I. 103 at 3-4. Neither party has requested further claim construction by the Court prior to the Court's resolution of the pending motions.

3

## B.    **Procedural History**

On May 7, 2020, Plaintiff filed its Original Complaint in this action, alleging infringement of the '410 Patent, the '411 Patent, and the '440 Patent. D.I. 1. Plaintiff's Original Complaint alleged that the claims of all three patents were "expressly directed to providing real-time targeted advertising based on keywords contained on web pages visited by a user." D.I. 1 ¶ 24. Defendant moved to dismiss Plaintiff's Original Complaint on the basis that the asserted claims of the '410 Patent, the '411 Patent, and the '440 Patent claimed ineligible subject matter under 35 U.S.C. § 101. D.I. 8; D.I. 9. Plaintiff did not dispute, "[f]or purposes of th[at] motion," that Claim 1 of the '410 Patent was representative of all claims asserted. D.I. 20 at 1.

On December 4, 2020, Judge Leonard Stark[1] heard oral argument on Defendant's motion to dismiss. D.I. 24 (transcript of oral argument). Defendant's motion to dismiss briefing was joined by Twitter, Inc., a defendant in a related case involving the same patents, *B.E. Technology, L.L.C. v. Twitter, Inc.*, Civil Action No. 20-621-GBW (D. Del.). Judge Stark held that the representative claim, Claim 1 of the '410 Patent, was directed to an abstract idea at *Alice* Step One. D.I. 26 at 1; *see also id.* at 11 ("I further agree that this articulation of what the claims are directed to is an abstract idea. That is, providing real-time targeted advertising based on keywords on webpages visited by a user is an abstract idea." (cleaned up)). Judge Stark permitted Plaintiff to file a motion for leave to amend its Original Complaint to add allegations describing inventiveness under *Alice* Step Two. *Id.* at 16.

On January 4, 2021, Plaintiff filed a motion for leave to amend its pleading in both related actions. D.I. 28; *see also Twitter, Inc.*, Civil Action No. 20-621-GBW (D. Del. Jan. 4, 2021) (D.I. 28). After hearing oral argument from the parties on Plaintiff's motions for leave to amend, Judge

---

[1] The Honorable Leonard Stark has since been elevated and is serving as a United States Circuit Judge of the United States Court of Appeals for the Federal Circuit.

Stark concluded that, "at [*Alice* Step One], the defendants have met their burden, but at [*Alice* Step Two], defendants have not." D.I. 35 at 51:20-21. On February 11, 2021, Plaintiff filed its First Amended Complaint, the operative pleading in this action. D.I. 34.

On September 20, 2021, the parties filed a joint stipulation to stay this action pending the resolution of *inter partes* review proceedings ("IPR") challenging the validity of the '410 Patent, the '411 Patent, and the '440 Patent. D.I. 60. On October 13, 2022, the parties filed a joint status report, which explained that the United States Patent and Trademark Office ("USPTO") had issued final written decisions in the IPRs, wherein claims 1-19 of the '410 Patent, claims 1-24 and 26-37 of the '440 Patent, and claims 1-19 of the '411 Patent were deemed to be unpatentable. D.I. 63 at 1. The Federal Circuit affirmed the USPTO without issuing a separate written decision. *B.E. Tech., L.L.C. v. Twitter, Inc.*, C.A. Nos. 2023-1126, 2023-1127, 2023-1128, 2023-1130, 2023-1131, 2023-1132, 2024 WL 3764472, at *1 (Fed. Cir. Aug. 13, 2024).

On October 16, 2025, the parties each filed two motions for summary judgment (D.I. 246; D.I. 250; D.I. 259; D.I. 263). The parties' summary judgment motions are now fully briefed.

## II.    LEGAL STANDARD

### A.    Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact is one that could lead a reasonable jury to find in favor of the nonmoving party." *Bletz v. Corrie*, 974 F.3d 306, 308 (3d Cir. 2020) (citing *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015)). "The court must review the record as a whole, draw all reasonable inferences in favor of the nonmoving party, and must not 'weigh the evidence or make credibility determinations.'" *Id.* at 308 (quoting *Parkell v. Danberg*, 833 F.3d 313, 323 (3d Cir. 2016)).

"On an issue as to which the moving party bears the burden of proof at trial, . . . the party seeking summary judgment must 'establish the absence of a genuine factual issue.'" *Brit. Telecommunications PLC v. IAC/InterActiveCorp*, Civil Action No. 18-366-WCB, 2025 WL 2240699, at *2 (D. Del. Aug. 5, 2025) (Bryson, J., sitting by designation) (quoting *Resol. Tr. Corp. v. Gill*, 960 F.2d 336, 340 (3d Cir. 1992)). "If the motion does not persuasively establish that no factual issue exists, summary judgment should be denied 'even if no opposing evidentiary matter is presented.'" *Id.* (quoting *Resol. Tr. Corp*, 960 F.2d at 340). "Once the moving party with the burden of proof makes a showing that there is no genuine factual issue, that party is entitled to summary judgment 'unless the non-moving party comes forward with probative evidence that would demonstrate the existence of a triable issue of fact.'" *Id.* (quoting *In re Bressman*, 327 F.3d 229, 238 (3d Cir. 2003)).

## B.      Patent Eligibility

Section 101 of the Patent Act provides that, "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. "Patent eligibility under 35 U.S.C. § 101 is a question of law that may contain underlying factual issues." *US Pat. No. 7,679,637 LLC v. Google LLC*, 164 F.4th 1373, 1377 (Fed. Cir. 2026) (citing *Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1342 (Fed. Cir. 2018)). Patent eligibility is evaluated using a two-part test. *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208, 217-18 (2014); *Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*, 566 U.S. 66, 78 (2012).

Under "step one" of the *Alice* framework, the Court first determines "whether the claims at issue are directed to . . . patent-ineligible concepts," such as an abstract idea. *Alice*, 573 U.S. at 217. Under "step two" of the *Alice* framework, the Court must "consider the elements of each

6

claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Id.* (quoting *Mayo*, 566 U.S. at 78). "An ineligibility analysis depends on 'the language of the claims themselves.'" *GoTV Streaming, LLC v. Netflix, Inc.*, No. 2024-1669, 2026 WL 346200, at *5 (Fed. Cir. Feb. 9, 2026) (cleaned up). "Although the specification's (and prosecution history's) recitation of the problem faced and the asserted inventive solution informs the inquiry into what the combination of claimed features is directed to, only features that are claimed, not unclaimed details that appear in the specification, can supply something beyond ineligible matter—here, something beyond an abstract idea and sufficient to render the claim eligible." *Id.* (cleaned up).

"In deciding questions of patent eligibility and, specifically, in navigating the parameters of an abstract idea, it is proper for courts to compare the claims at issue to those previously analyzed in other judicial decisions." *Int'l Bus. Machines Corp. v. Zynga Inc.*, C.A. No. 22-590-GBW, 2024 WL 3967402, at *3 (D. Del. Aug. 28, 2024) (citations omitted). "While prior cases can be helpful in analyzing eligibility, whether particular claim limitations are abstract . . . must be decided on a case-by-case basis in light of the particular claim limitations, patent specification, and invention at issue." *CosmoKey Sols. GmbH & Co. KG v. Duo Sec. LLC*, 15 F.4th 1091, 1099 (Fed. Cir. 2021).

## III.   DISCUSSION

The Court divides its discussion into four parts: (A) The Court Denies Plaintiff's First Motion for Summary Judgment; (B) The Court Denies Plaintiff's Second Motion for Summary Judgment; (C) The Court Grants Defendant's First Motion for Summary Judgment; and (D) The Court Denies-as-Moot Defendant's Second Motion for Summary Judgment.

7

### A.    The Court Denies Plaintiff's First Motion for Summary Judgment

Plaintiff moves for summary judgment that the Asserted Claim is not directed to ineligible subject matter under *Alice* Step One.  Plaintiff asserts that: (1) this Court should not continue to treat the now-invalidated Claim 1 of the '410 Patent as representative of Asserted Claim; and (2) the Asserted Claim, when assessed on its own merits, is not directed to an abstract idea under 35 U.S.C. § 101.  D.I. 261 at 12-20.  The Court addresses each in turn.

### 1.    Previous Findings regarding *Alice* Step One

"Courts may treat a claim as representative in certain situations, such as if the patentee does not present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claim or if the parties *agree to treat a claim as representative*." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018) (emphasis added) (citations omitted).  As noted above, Plaintiff did not dispute, for the purpose of Google's motion to dismiss, that Claim 1 of the '410 Patent was representative of the Asserted Claim.  D.I. 20 at 1.  In the context of a representative claim analysis, the Asserted Claim has twice been deemed directed to an abstract idea under *Alice* Step One.  First, in December 2020, Judge Stark concluded that the "representative claim . . . is directed to an abstract idea."  D.I. 26 at 11.  Second, two months later, Judge Stark recognized that, "coming to [*Alice* Step One], it poses a question of law that the Court has already resolved."  D.I. 35 at 50:7-8.  Again, Judge Stark came to the "same conclusion."  *Id.* at 50:9, 19-22 ("I continue to believe that the claims are directed to the abstract idea that [] they were directed to in December: 'providing real-time targeted advertising based on keywords contained on web pages visited by a user.'").

Plaintiff nonetheless contends that the Asserted Claim must be analyzed on its own merits.  *See* D.I. 261 at 12-16.  Plaintiff advances three overlapping rationales for this contention, which the Court addresses in turn.

8

*First*, Plaintiff asserts that the subsequent invalidation of Claim 1 of the '410 Patent means that "the Court cannot consider the invalidated claim as representative of the only claim still remaining in the case, [the Asserted Claim]" and that the Court has no Article III power with respect to Claim 1 of the '410 Patent. D.I. 261 at 12-13. However, as the Federal Circuit has explained, "eligibility findings with respect to representative claims only *extend to claims for which they are representative . . . .*" *Mobile Acuity*, 110 F.4th at 1291 (emphasis added). As a result, Plaintiff's framing of the issue is misguided. Even though Claim 1 of the '410 Patent is no longer asserted, the holdings regarding Claim 1 of the '410 Patent "extend[ed] to [the Asserted Claim] for which [Claim 1 of the '410 Patent] [was] representative . . . ." *Id.*

The cases relied upon by Plaintiff are inapposite and reflect the well-settled principle that a court may not determine the patent eligibility of claims not asserted in litigation. *See Ameranth, Inc. v. Domino's Pizza, LLC*, 792 F. App'x 780, 785 (Fed. Cir. 2019) (no case or controversy existed in declaratory judgment action with respect to claims not accused of infringement in the litigation, which party conceded at oral argument); *Streck, Inc. v. Rsch. & Diagnostic Sys., Inc.*, 665 F.3d 1269, 1281 (Fed. Cir. 2012) (no case or controversy existed in declaratory judgment action with respect to unasserted claims); *Fox Grp., Inc. v. Cree, Inc.*, 700 F.3d 1300, 1308 (Fed. Cir. 2012) (similar, citing *Streck*); *see also Sanofi-Aventis U.S., LLC v. Dr. Reddy's Lab'ys, Inc.*, 933 F.3d 1367, 1374-75 (Fed. Cir. 2019) (no case or controversy existed in declaratory judgment action as to claims disclaimed by the patentee prior to the time the district court entered judgment). This issue, however, is not before the Court. Thus, the Court rejects Plaintiff's first rationale.

*Second*, Plaintiff asserts that the law of the case doctrine does not apply because "circumstances have changed materially since the Court's prior judgment – most importantly, the representative claim that formed the basis of the Court's decision is no longer part of the case."

9

D.I. 261 at 15. The Court disagrees. "The law of the case doctrine states that 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" *Am. Axle & Mfg. Inc. v. Neapco Holdings LLC*, C.A. No. 15-1168-GBW, 2023 WL 12252464, at *2 (D. Del. July 28, 2023) (quoting *Speeney v. Rutgers, The State Univ.*, 369 F. App'x 357, 359 (3d Cir. 2010)). The purpose of the doctrine is to "to ensure judicial efficiency and to prevent the possibility of endless litigation." *Kaneka Corporation v. Designs for Health, Inc.*, Civil Action No. 21-209-WCB, 2025 WL 1684677, at *2 (D. Del. June 16, 2025) (Bryson, J., sitting by designation) (quoting *Toro Co. v. White Consolidated Indus., Inc.*, 383 F.3d 1326, 1335 (Fed. Cir. 2004)). "Its elementary logic is matched by elementary fairness – a litigant given one good bite at the apple should not have a second." *Id.* (quoting *Perkin-Elmer Corp. v. Computervision Corp.*, 732 F.2d 888, 900 (Fed. Cir. 1984)). Plaintiff is correct that "there is an exception to the law of the case doctrine when new evidence is presented." *Speeney*, 369 F. App'x at 359. "This exception to the law of the case doctrine makes sense because when the record contains new evidence, 'the question has not really been decided earlier and is posed for the first time.'" *Id.* (citation omitted). This exception does not apply here, as the purportedly "new evidence" – the invalidation of Claim 1 of the '410 Patent for lack of novelty – has no impact on the previous *Alice* Step One rulings. *See, e.g., Diamond v. Diehr*, 450 U.S. 175, 188-89 (1981) ("The 'novelty' of any element or steps in a process, or even of the process itself, is of no relevance in determining whether the subject matter of a claim falls within the § 101 categories of possibly patentable subject matter."). Thus, the Court rejects Plaintiff's second rationale.

*Third*, Plaintiff asserts that Claim 1 of the '410 Patent "differs materially" from the Asserted Claim, citing differences between the language of the Asserted Claim and Claim 1 of the '410 Patent. D.I. 261 at 15-16. This same contention has already been rejected. At oral argument

on Plaintiff's motion for leave to amend, Plaintiff made a similar suggestion. Judge Stark rejected it, noting that "it is too late, far too late for [Plaintiff] to now argue that [C]laim 1 of the '410 [P]atent is not representative, fully representative on the 101 issues before me. They had numerous opportunities prior to today to argue that it is not fully representative for purposes of Section 101, and I do not believe that they, that they did so." D.I. 35 at 49:20-50:2. For the same reason, the Court rejects Plaintiff's third rationale.

For the reasons set forth above, the Court rejects each of the three rationales proffered by Plaintiff. However, in the interest of providing a more fulsome analysis of the Asserted Claim, the Court analyzes the Asserted Claim under *Alice* Step One. *See also F45 Training Pty Ltd. v. Body Fit Training USA Inc.*, C.A. No. 20-1194-WCB, 2022 WL 17177621, at *7 (D. Del. Nov. 17, 2022) (deciding to "revisit the patent-eligibility analysis" under both steps of the *Alice* framework at the summary judgment stage, even though *Alice* Step One had been previously decided against the patentee at the motion to dismiss stage).

### 2.    *Alice* Step One[2]

Under *Alice* Step One, the Court must determine whether the claims are "directed to" ineligible subject matter. *Broadband iTV, Inc. v. Amazon.com, Inc.*, 113 F.4th 1359, 1367 (Fed. Cir. 2024), *cert. denied*, 145 S. Ct. 1924 (2025). This inquiry requires that the Court look to "the character of the claims as a whole." *Id.* (citing *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016)). "In addition to the claim language itself, [the Court] may also examine the patent's specification to determine the meaning of the claims as a whole." *Id.* (citing *Yu v. Apple Inc.*, 1 F.4th 1040, 1043 (Fed. Cir. 2021)).

---

[2] Both parties have moved for summary judgment with respect to *Alice* Step One. D.I. 246; D.I. 259. However, only Defendant has moved for summary judgment with respect to *Alice* Step Two. *See infra* § (III)(C).

11

In the background section of the specification, the '440 Patent describes how the expansion of the Internet led to the more widespread distribution of software to end users. '440 Patent at 1:30-35. In the context of Internet-based targeted advertising, the specification also explains that to achieve demographically-targeted advertising, an advertiser or distributor must obtain some demographic data on its end users. *Id.* at 2:40-42. A known method in the prior art for doing this was through acquiring information from users via an online form. *Id.* at 2:42-60. The specification further describes other known arrangements in the prior art for "obtaining and reporting information about an end user over a computer network such as the Internet." *Id.* at 2:61-64; *see also id.* at 2:63-3:9, 3:9-22. These arrangements, however, suffered from the "disadvantage" that they were "generally limited to gathering information concerning only certain limited uses of the computer." *Id.* at 3:25-27.

The Asserted Claim generally recites a method for (1) "permitting" a computer user to access one or more servers on a network; (2) "transferring software" to a computer associated with the user, wherein that transferred software is configured to, *inter alia*, "display advertising content and record computer usage information associated with utilization of the computer"; (3) "determining" a unique identifier associated with the computer; and (4) "selecting" a targeted advertisement based upon the information associated with that unique identifier; (5) "receiving" a request for an advertisement; (6) "providing" the selected advertisement; and (7) "providing reactive targeting of advertising to the user in real time by selecting and presenting an advertisement based at least in part on user interaction with the computer." '440 Patent at Claims 1, 25.

In analyzing the Asserted Claim, the Court finds several Federal Circuit decisions applying the *Alice* framework in analogous circumstances instructive. *See Intell. Ventures I LLC v. Cap.*

*One Bank (USA)*, 792 F.3d 1363 (Fed. Cir. 2015); *Bridge & Post, Inc. v. Verizon Commc'ns, Inc.*, 778 F. App'x 882 (Fed. Cir. 2019); *Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359 (Fed. Cir. 2020); *Free Stream Media Corp. v. Alphonso Inc.*, 996 F.3d 1355 (Fed. Cir. 2021); *Broadband iTV, Inc. v. Amazon.Com, Inc.*, 113 F.4th 1359 (Fed. Cir. 2024).[3]

In *Intellectual Ventures*, the Federal Circuit addressed a claim relating to "to customizing information based on (1) information known about the user and (2) navigation data." 792 F.3d at 1369. As for the first category (user information), the Federal Circuit stated that the practice of "information tailoring" based on the viewer's location or address was "a fundamental . . . practice long prevalent in our system . . . ." *Id.* (quoting *Alice*, 573 U.S. at 219). In so doing, the court referenced the practice of tailoring newspaper inserts to the customer's location. *See id.* ("Providing this minimal tailoring – e.g., providing different newspaper inserts based upon the location of the individual – is an abstract idea."). As for the second category (navigation data), the court explained:

> There can be no doubt that television commercials for decades tailored advertisements based on the time of day during which the advertisement was viewed. For example, a television channel might choose to present a commercial for children's toys during early morning cartoon programs but beer during an evening sporting event. An advertisement taking into account the time of day and tailoring the information presented to the user based on that information is another "fundamental . . . practice long prevalent in our system . . . ." *Alice*, 134 S.Ct. at 2356.

*Id.* at 1370. Accordingly, the court held that the claim was directed to an abstract idea. *Id.*

Subsequently, in *Bridge & Post*, the Federal Circuit considered a claim that required "'retrieving a persistent device identifier,' 'determining' and 'retrieving' information associated

---

[3] Earlier in the litigation, Judge Stark recognized that *Intellectual Ventures* and *Customedia* were "highly similar" cases. *See* D.I. 26 at 11-12.

with the identifier, 'analyzing' the information, and 'placing directed media.'" 778 F. App'x at 887. The court held that, "as a whole, the claim [was] directed to the use of persistent identifiers to implement targeted marketing." *Id.*; *see also id.* ("Targeted marketing is a form of 'tailoring information based on [provided] data,' which we have previously held is an abstract idea." (alteration in original) (quoting *Intell. Ventures*, 792 F.3d at 1369)).

Next, in *Customedia*, the Federal Circuit addressed a claim reciting a "data delivery system for providing automatic delivery of . . . specifically identified advertising data." 951 F.3d at 1363 (citation omitted). On appeal, the patentee contended that, "by providing a reserved and dedicated section of storage, the claimed invention improves the data delivery system's ability to store advertising data, transfer data at improved speeds and efficiencies, and prevent system inoperability due to insufficient storage." *Id.* Distinguishing its prior decision in *Enfish* and finding the claim directed to an abstract idea, the court concluded that any claimed improvements were directed toward "generic speed and efficiency improvements inherent in applying the use of a computer to any task," as opposed to "an improvement in the functioning of the computer itself." *Id.* at 1365; *see also id.* ("Therefore, the claimed invention is at most an improvement to the abstract concept of targeted advertising wherein a computer is merely used as a tool.").

In *Free Stream Media*, the Federal Circuit analyzed two claims of a patent that related to "a system providing a mobile phone user with targeted information (i.e., advertisements) that . . . deemed relevant to the user based on data gathered from the user's television." 996 F.3d at 1358 (citation omitted). Similarly to the instant case, the patentee contended that the "claimed invention is like those previously found eligible in *Enfish* [and its progeny]." *Id.* at 1362. However, the court disagreed, concluding that "the alleged technological improvement does nothing more than

14

implement a computer to achieve the abstract idea of providing targeted advertising to the mobile device user." *Id.* at 1365.

Finally, in *Broadband*, the Federal Circuit addressed a patent that sought to "improve existing program guides by adjusting the order of categories of listings within a guide based on a user's viewing history." 113 F.4th at 1364. The court concluded that the representative claim was "directed to the abstract idea of collecting and using viewing history data to recommend categories of video content." *Id.* at 1371. In so doing, the court recognized that the representative claim of the patent was "directed to a type of 'targeted advertising,' which [the Federal Circuit has] repeatedly found abstract." *Id.* (collecting cases, including *Intell. Ventures, Free Stream Media*, and *Customedia*); *see also Chewy, Inc. v. Int'l Bus. Machines Corp.*, 94 F.4th 1354, 1365 (Fed. Cir. 2024) (finding that claims which "merely recite[d] the concept of identifying advertisements based on search results, without any specificity as to how this is accomplished" were "directed to the abstract idea of identifying advertisements based on search results").

Against this backdrop, Plaintiff asserts that "[t]he Asserted Claim discloses a specific implementation of a network-based (e.g., utilizing the internet), two-tiered targeted advertising method to provide reactive targeted advertisements in real time." D.I. 261 at 16. According to Plaintiff, the cases involving claims most similar to the Asserted Claim for the purpose of *Alice* Step One are two cases that follow the Federal Circuit's decision in *Enfish*. *See* D.I. 342 (first citing *Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999 (Fed. Cir. 2018); and then citing *Uniloc USA, Inc. v. LG Elecs. USA, Inc.*, 957 F.3d 1303 (Fed. Cir. 2020)). A common thread in these cases is that they involve claims directed toward specific technological solutions that improved the functionality of a computer or the network itself. *See Data Engine*, 906 F.3d at 1011 (finding as not directed to patent ineligible subject matter a claim that recited "a specific structure

15

(i.e., notebook tabs) within a particular spreadsheet display that performs a specific function (i.e., navigating within a three-dimensional spreadsheet)"); *Uniloc USA*, 957 F.3d at 1305-07 (finding as not directed to patent ineligible subject matter a claim directed to "a primary station for use in a communications system" because the claimed invention was directed to "the reduction of latency experienced by parked secondary stations in communication systems").

Defendant responds that the Federal Circuit cases most similar to the present case for the purpose of *Alice* Step One are *Intellectual Ventures*, *Customedia*, and *Chewy*, described above. D.I. 340. According to Defendant, the Asserted Claim is directed to an abstract idea. *See generally* D.I. 288. At *Alice* Step One, the Court agrees with Defendant.

Considered as a whole, and in view of the specification, the Asserted Claim is directed to the abstract idea of providing real-time targeted advertising based on information known about a user. Targeted advertising, a form of "tailoring information based on [provided] data," is an abstract idea. *Bridge & Post*, 778 F. App'x at 887 (alteration in original) (quoting *Intell. Ventures*, 792 F.3d at 1369). The Asserted Claim is directed to a computer-implementation of the abstract idea of providing a form of real-time targeted advertising based on information known about a user, and the focus of the Asserted Claim is like many of the claims that the Federal Circuit has repeatedly held are directed to ineligible subject matter. *See id.* ("The recited steps of 'retrieving a persistent device identifier,' 'determining' and 'retrieving' information associated with the identifier, 'analyzing' the information, and 'placing directed media' based on that analysis are nothing more than a computer-implementation of targeted marketing over the Internet."). Indeed, providing real-time targeted advertising based on information known about a user is akin to a salesperson tailoring a sales pitch to a particular customer or handing them a particular brochure in real-time based upon their conversation, or "a television channel [] choos[ing] to present a

commercial for children's toys during early morning cartoon programs but beer during an evening sporting event." *Intell. Ventures*, 792 F.3d at 1370; *see also Alice*, 573 U.S. at 219-20 (considering whether the claims at issue extended to a "fundamental . . . practice long prevalent in our system . . . ."). That the Asserted Claim limits an abstract idea to a particular environment does not materially impact the focus of the *Alice* Step One analysis. *See, e.g., In re TLI Communications LLC Patent Litigation*, 823 F.3d 607, 613 (Fed. Cir. 2016) ("[L]imit[ing] the abstract idea to a particular environment . . . does not make the claims any less abstract for the step 1 analysis." (citation omitted)). Thus, like the claims in *Customedia* and *Chewy*, the Asserted Claim is more aptly described as being directed to "an improvement to the abstract concept of targeted advertising," as opposed to an improvement in computer functionality under *Enfish* and its progeny. *See Chewy*, 94 F.4th at 1366 (quoting *Customedia*, 951 F.3d at 1365).

The Federal Circuit has also recognized that "[t]he 'directed to' inquiry may also involve looking to the specification to understand 'the problem facing the inventor' and, ultimately, what the patent describes as the invention." *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 767 (Fed. Cir. 2019) (citations omitted). In the present action, the specification suggests that the Asserted Claim is directed to the abstract idea of providing real-time targeted advertising based on information known about a user. As the specification provides, the invention emerged from a problem in the art that existing systems were "generally limited to gathering information concerning only certain limited uses of the computer." '440 Patent at 3:25-26. The summary of the invention indicates that the '440 Patent answers this problem by providing "a method for reactive targeted advertising via the internet for display on a user's computer accessing a webpage." '440 Patent at 5:7-11; *see also ChargePoint*, 920 F.3d at 768 (considering the summary of the invention in the context of *Alice* Step One). Although this is not "necessarily dispositive of

17

the 'directed to inquiry, it strongly suggests that the abstract idea identified in [the Asserted Claim] may indeed be the focus of that claim." *ChargePoint*, 920 F.3d at 768.

For the foregoing reasons, the Court concludes at *Alice* Step One that the Asserted Claim is directed to an abstract idea. Thus, the Court denies Plaintiff's First Motion for Summary Judgment (D.I. 259). *See* Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). The Court also denies-as-moot Defendant's Motion for Leave (D.I. 330).

### B.    The Court Denies Plaintiff's Second Motion for Summary Judgment

Since the Court denies Plaintiff's First Motion for Summary Judgment, the Court denies Plaintiff's Second Motion for Summary Judgment (D.I. 250) pursuant to the Court's summary judgment ranking procedures.

### C.    The Court Grants Defendant's First Motion for Summary Judgment

Defendant moves for summary judgment that the Asserted Claim is "patent ineligible under 35 U.S.C. § 101." D.I. 246. Having already addressed *Alice* Step One above, *see supra* § (III)(A), the Court focuses its analysis on *Alice* Step Two. This second step of the *Alice* framework "consider[s] the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Alice*, 573 U.S. at 217 (quoting *Mayo*, 566 U.S. at 79). "The question of whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is a question of fact." *Berkheimer*, 881 F.3d at 1368. "Any fact, such as this one, that is pertinent to the invalidity conclusion must be proven by clear and convincing evidence." *Id.* (citation omitted). "When there is no genuine issue of material fact regarding whether the claim element or claimed combination is well-understood, routine, conventional to a

18

skilled artisan in the relevant field, this issue can be decided on summary judgment as a matter of law." *Id.*

With respect to Step Two of the *Alice* framework, Defendant contends that there is no inventive concept to save the Asserted Claim. D.I. 247 at 9-19. Plaintiff disagrees. Plaintiff asserts that questions of material fact preclude summary judgment, and that several steps of the Asserted Claim, considered individually and, as an ordered combination, provide inventive concepts. *See* D.I. 293 at 2, 13-28.

### 1.    "Transferring" Limitation Fails to Provide an Inventive Concept

The Court begins with the "transferring" limitation, which recites: "transferring a copy of software to a computer associated with the computer user, the software being configured to run on the computer to display advertising content and record computer usage information associated with utilization of the computer, wherein the computer usage information includes data regarding one or more programs run on the computer . . . ." '440 Patent at Claim 1.

With respect to the "transferring" limitation, Defendant focuses upon the intrinsic evidence to support its claim that the requirements of this limitation were well-known, routine, and conventional at the time of the invention. Defendant claims that the specification's "admissions" preclude any issues of material fact regarding this limitation. *See* D.I. 247 at 14. The Court agrees.

Defendant identifies instances in the specification where the "transferring" element was disclosed by the prior art. D.I. 247 at 14-15. For example, the specification of the '440 Patent discusses U.S. Patent No. 5,724,521 (the "Dedrick Patent"). '440 Patent at 2:61-3:09. The specification of the '440 Patent describes the Dedrick Patent as disclosing "an electronic advertising system," that, among other functions, "can include client-side software which acquires and compiles information concerning the user's interaction with the advertising or other content," as well as "select advertisement titles that are sent to the end user." *Id.* at 2:64-65, 3:01-03, 3:07-

19

09. The Court finds that there is no meaningful distinction between software that selects advertisements to send to users and "compiles information concerning the user's interaction with the advertising or other content," as described by the Dedrick Patent, and software displaying advertisements and collecting user information regarding programs run on a computer, as claimed in the "transferring" limitation of the '440 Patent. Moreover, simply "transferring" the software to the end user's computer is not an inventive concept, as all software must be transferred to the computer on which it is run. *Cf.* '440 Patent at 1:32-36 ("The continuing expansion of the Internet and other private and semi-private networks has led to the now widespread practice of electronic distribution of software to end users"). Plaintiff's arguments to the contrary are unpersuasive. *First*, Defendant identifies that the specification acknowledges that the electronic distribution of software was "widespread." *See* D.I. 247 at 14 (citing '440 Patent at 1:32-36). Plaintiff alleges that such a statement is "overbroad" and that the *claimed* transfer of software "for the purposes of displaying ads and recording computer usage" to the user's computer was not well-known or convention. D.I. 293 at 18. However, Plaintiff's differentiation misses the mark. Defendant is not using the specification's admission that the electronic distribution of software was widespread to show that the entire claimed method was well-known or conventional, but only to show that the "transferring" limitation was well-known or conventional. D.I. 247 at 14; *see also Brit. Telecommunications PLC v. IAC/InterActiveCorp*, No. 18-366-WCB, 2025 WL 2240699, at *16 (D. Del. Aug. 5, 2025) (Bryson, J., sitting by designation) ("Thus, the appropriate question at *Alice* step two 'is not whether the entire claim as a whole was "well-understood, routine [and] conventional,"' but whether, apart from the abstract idea itself, the additional element individually or in combination with others added anything inventive." (alteration in original) (quoting *Chamberlain Grp., Inc. v. Techtronic Indus. Co.*, 935 F.3d 1341, 1348-49 (Fed. Cir. 2019))).

*Second*, as Defendant observes, the specification provides several examples of related software in the prior art. *See* '440 Patent at 1:47-54 (discussing the "Pointcast" prior art system), 2:61–3:22 (discussing the Dedrick Patent), 3:10-13 (discussing U.S. Patent No. 5,732,218 (the "Bland Patent")), 3:35-44 (discussing U.S. Patent No. 5,347,632 (the "Filepp Patent")). For example, the specification of the '440 Patent describes the Pointcast product as a "well-known" example of a push technology product that provides software at no cost to the user and allows for the advertiser to obtain advertising exposure. '440 Patent at 1:47-54. Similarly, the Bland Patent describes "a system for gathering data concerning an end-user's access to information resources and reporting the data back to the servers that contain the information resources." '440 Patent at 3:10-13. Plaintiff attempts to assert that the "transferring" limitation contains an inventive concept by alleging that prior art systems "'are generally limited to gathering information concerning only certain limited uses of the computer' . . . ." D.I. 293 at 18 (quoting '440 Patent at 3:23-34); *cf. Chewy*, 94 F.4th at 1367 ("The concept of data collection, recognition, and storage is undisputedly well-known. Indeed, humans have always performed these functions." (citation omitted)). Importantly, despite asserting that the disclosed prior art "depicts one of the problems the Asserted Claim sought to solve," Plaintiff does not explain how such problem is addressed by the language of said claims. *See* D.I. 293 at 18; *see also T-Jat Sys. 2006, Ltd. v. Expedia, Inc. (DE)*, No. 16-581-RGA, 2018 WL 1525496, at *6 (D. Del. Mar. 28, 2018) ("[T]he claims themselves must provide the inventive concept."). To the contrary, the "transferring" limitation provides for collection of data "regarding one or more programs run on the computer," and does not contain a restriction regarding the breadth of information sought to be collected by the claimed method.

21

'440 Patent at Claim 1.[4]  Thus, "[t]he main problem that [Plaintiff] cannot overcome is that the claim – as opposed to something purportedly described in the specification – is missing an inventive concept." *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1338 (Fed. Cir. 2017).

Plaintiff, in support of its argument that the Court should look to the specification at *Alice* Step Two, relies on *CosmoKey Sols. GmbH & Co. KG v. Duo Sec. LLC*, 15 F.4th 1091 (Fed. Cir. 2021).  However, Plaintiff's reliance is misplaced.  In *CosmoKey*, the Federal Circuit found that a claimed authentication method provided an inventive concept and thus passed *Alice* Step Two.  15 F.4th at 1099.  However, the Federal Circuit did not import an inventive concept from the specification into the claims, as Plaintiff suggests, but merely cited to the specification to show that the claimed steps were unconventional and an improvement over the prior art.  *Id.* at 1098-99. Specifically, the Federal Circuit found that the claimed authentication method contained an inventive concept where the specification explained that, "compared to the prior art and conventional multifactor authentication systems, the [patent-in-suit] performs user authentication with fewer resources, less user interaction, and simpler devices."  *Id.* at 1099.  The patent in *CosmoKey* did not merely *enable* an improvement in authentication over the prior art, but "ensur[ed] that the authentication function is normally inactive, activating only for a transaction, communicat[ed] the activation within a certain time window, and thereafter ensur[ed] that the authentication function is automatically deactivated."  *Id.*  Unlike *CosmoKey*, the Asserted Claim in this action merely encompassed an improvement described in the specification, but similarly

---

[4] With respect to the wide breadth of information subject to the claimed method, as set forth above, "computer usage information" recited in the Asserted Claims has been construed broadly to mean "data concerning a person's use of a computer, including such things as what programs they run, what information resources they access, what time of day or days of the week they use the computer, and so forth." D.I. 104 at 2.

encompassed unimproved, routine, and conventional methods of data collection and usage, a scenario that the Federal Circuit has repeatedly found to be insufficient at *Alice* Step Two. *See, e.g., Mortg. Grader, Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314, 1326 (Fed. Cir. 2016) ("Plainly, conflicts-of-interest and predatory lending *are still possible* when practicing the claims." (emphasis added)); *Dropbox, Inc. v. Synchronoss Techs., Inc.*, 815 F. App'x 529, 537 (Fed. Cir. 2020) ("Dropbox argues that the combination of the two concepts is inventive because '[t]he '541 patent's data structure allows the data to be formatted in a way that makes data transfer reliable and efficient.' But '[t]o save a patent at step two, an inventive concept must *be evident in the claims.*'" (alterations in original) (citations omitted)).

*Third*, Plaintiff asserts that its expert's arguments are material to the Court's § 101 analysis, as Federal Circuit precedent requires that whether an inventive concept exists at *Alice* Step Two "must be decided on a case-by-case basis in light of the particular claim limitations, patent specification, and invention at issue." D.I. 293 at 19 (quoting *CosmoKey*, 15 F.4th at 1099). However, Plaintiff's argument regarding its expert is likewise flawed. Although Plaintiff's expert states that "[t]he specification of the '440 Patent explains how embodiments of the invention overcame" technical limitations present in the prior art, he fails to describe how said embodiments are evident in the language of the "transferring" limitation of the Asserted Claim. D.I. 249, Ex. 3 ¶ 320. "Even if [] portions of the specification . . . disclosed an inventive concept, this is not enough to save the patent at step two of the analysis because the inventive concept must be found in the claims themselves." *Validity, Inc. v. Project Bordeaux, Inc.*, No. 23-365-SRF, 2023 WL 6200287, at *10 (D. Del. Sept. 22, 2023) (citing *Two-Way Media*, 874 F.3d at 1338). The Court accepts as true Plaintiff's expert's declaration that the disclosed embodiments offer unconventional methods that solve problems present in the prior art, but these purported improvements are not

evident in the "transferring" limitation of the Asserted Claim. *Ficep Corp. v. Peddinghaus Corp.*, 587 F. Supp. 3d 115, 125 (D. Del. 2022), *aff'd*, No. 2022-1590, 2023 WL 5346043 (Fed. Cir. Aug. 21, 2023) ("I accept Mr. Chipman's declaration that a computer identifies the intersection parameters differently than how a human would do so. But this limitation is not in the claims."); *see also Mortg. Grader*, 811 F.3d at 1326 (expert declaration that the claimed invention steered borrowers away from predatory loans did not supply an inventive concept when "conflicts-of-interest and predatory lending are still possible when practicing the claims"). Thus, Plaintiff's expert's declaration does not create a genuine issue of material fact regarding an inventive concept provided by the "transferring" limitation.

Having drawn all inferences in favor of the non-movant, which the Court must at the summary judgment stage, the Court concludes that the "transferring" limitation fails to provide an inventive concept sufficient to save the Asserted Claim at *Alice* Step Two.

2.      "Determining" and "Selecting" Limitations Fail to Provide an Inventive Concept

Plaintiff also asserts that the "determining" and "selecting" limitations of the Asserted Claim likewise supply an inventive concept. D.I. 293 at 19-21. The "determining" and "selecting" limitations recite:

> determining a unique identifier associated with the computer, wherein the identifier uniquely identifies information sent from the computer to the one or more servers;
>
> selecting an advertisement to be displayed on the computer, the selection based at least on information associated with the unique identifier identifying the computer; . . . .

'440 Patent at Claim 1.

In Plaintiff's view, the two elements "overcame the problems associated with the lack of a universal profile that was not limited to collecting web browser usage or finding and consulting an

24

individual application's cookies, but could record any and all computer usage information via the use of the transferred software." D.I. 293 at 19. This, in turn, "enable[d] the pre-processing of ads based on the universal profile containing all usage information of a particular computer," which Plaintiff contends is an inventive concept that saves the Asserted Claim at *Alice* Step Two. *Id.* Defendant disagrees. In Defendant's view, the "determining" and "selecting" limitations of the Asserted Claim likewise fail to supply an inventive concept. D.I. 247 at 15-16. Defendant asserts that the "determining" and "selecting" limitations do not contain the inventive concept that Plaintiff advocates for and, thus, the Asserted Claim cannot pass *Alice* Step Two based on these limitations. D.I. 247 at 16.

The Court agrees with Defendant. Plaintiff asserts that the "determining" and "selecting" limitations provide an inventive concept because they "enable[] the pre-processing of ads based on the universal profile containing *all* usage information of a particular computer." D.I. 293 at 19. However, this limitation is not present in the claim language. Importantly, the claim limits the "computer usage information" collected by requiring said information to include "data regarding one or more programs run on the computer . . . ." '440 Patent at Claim 1. Thus, the claim does not require that the universal profile be based on *all* computer usage information, but only that the universal profile includes data from one or more programs. *Id.*; *see also supra* n.4. Even if the Court assumes that pre-processing of ads based on a universal profile containing all usage information of a specific computer is a sufficiently inventive concept, such a concept is not present in the claim language, and thus cannot save the Asserted Claim at *Alice* Step Two. *Mortg. Grader*, 811 F.3d at 1326 (expert declaration that the claimed invention steering borrowers away from predatory loans did not supply an inventive concept when "conflicts-of-interest and predatory lending are still possible when practicing the claims"). Just as with the "transferring" limitation,

25

Plaintiff emphasizes that the inventive concept inquiry involves looking at the specification. D.I. 293 at 20 (citing *CosmoKey*, 15 F.4th at 1099). However, for the reasons discussed *supra* § (III)(C)(1), Plaintiff's reliance on the specification is misplaced. Plaintiff does not assert that the claims themselves require the inventive concept, but rather that the inventive concept disclosed in the specification is encompassed within the scope of the Asserted Claim. D.I. 293 at 19 ("The Asserted Claim's unique identifier *enables* the pre-processing of ads based on the universal profile containing all usage information of a particular computer." (emphasis added)); *id.* at 20 ("Google does not dispute that the specification's *embodiments* of elements 1(c) and 1(d) teach pre-processing and selection of ads to be cached on the user's computer." (emphases added)). Plaintiff *does* assert "that implementation of the claimed method is needed to provide the claimed result (building a universal profile, identifying all usage of a particular computer, and pre-processing of ads), which in turn achieve the improved two-tiered targeted advertising." *Id.* at 20. However, as discussed above, the Asserted Claim does not require (or claim) "identifying all usage of a particular computer," but merely *some* usage. *Contrast* D.I. 293 at 20 ("identifying all usage of a particular computer"), *with* '440 Patent at Claim 1 ("record computer usage information associated with utilization of the computer, wherein the computer usage information includes data regarding *one or more programs* run on the computer"). Thus, Plaintiff's purported inventive concept is not "evident in the claims," and the "selecting" and "determining" limitations do not provide an inventive concept sufficient to save Claim 25 of the '440 Patent at *Alice* Step Two.

### 3. "Real Time" Limitation Fails to Provide an Inventive Concept

Plaintiff further asserts that the "real time" limitation in Claim 25 of the '440 Patent provides an inventive concept. D.I. 293 at 21-22. The "real time" limitation recites, in part, "providing reactive targeting of advertising to the user in real time by selecting and presenting an advertisement based at least in part on user interaction with the computer." '440 Patent at Claim

25. Pointing to the specification of the '440 Patent, Plaintiff alleges that the specification describes internet advertising as "new" and that reactive targeting was "only available in 'some instances.'" D.I. 293 at 22 (citing D.I. 296 ¶ 6). Moreover, Plaintiff asserts that targeting "reactively" is "different than reactive targeting 'in real time.'" *Id.*

Defendant disagrees. Defendant asserts that the claims do not describe "how ads are selected – much less how they are selected 'in real time' . . . ." D.I. 312 at 8. Defendant also identifies several instances where the Federal Circuit has found that performing claim steps "in real time" was insufficient to provide an inventive concept at *Alice* Step Two. *Id.* (citing *Intellectual Ventures I*, 792 F.3d at 1370; *Recentive Analytics, Inc. v. Fox Corp.*, 134 F.4th 1205, 1215 (Fed. Cir. 2025); *Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355, 1366 (Fed. Cir. 2023)).

The Court agrees with Defendant. The specification explains that, in the prior art, advertisements could be targeted "reactively." '440 Patent 1:60-63. The Court is unpersuaded that the prior art's description of "reactive" advertising being available "in some instances" necessitates a finding that it was not well-known, routine, or conventional. *See* D.I. 293 at 22. To the contrary, the '440 Patent defines reactively as "[i]n response to some type of user input, such as a mouse click on a particular user application or on a link to an information resource." '440 Patent at 2:63-64. Not only does the '440 Patent describe advertisements targeted "reactively" as being known in the prior art, '440 Patent at 1:60-63, it describes prior art systems as providing such advertisements. *See, e.g.*, '440 Patent at 2:63-3:05 (discussing the Dedrick Patent, which discloses a system that includes sending an advertisement "at the request of the end user."). Thus, for the "real time" limitation to provide an inventive concept, it must be because "real time" is the inventive concept. Importantly, Plaintiff explicitly states that "the concept of 'real time,' standing

27

alone," is not an asserted inventive concept. D.I. 293 at 14. Nor could it, as performing the claims in "real time" is not significantly more than the abstract idea of providing real-time targeted advertising based on information known about a user, which the Court found the claims directed to at *Alice* Step One. *See BASCOM*, 827 F.3d at 1349 ("An inventive concept that transforms the abstract idea into a patent-eligible invention must be significantly more than the abstract idea itself . . . ." (citing *Alice*, 573 U.S. at 223-24)). Thus, the "real time" limitation cannot provide an inventive concept at *Alice* Step Two.

Furthermore, the "real time" limitation is insufficient to provide an inventive concept because it simply uses technology to perform ordinary mental processes quicker and in a computer environment. *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1355 (Fed. Cir. 2016) ("More particularly, a large portion of the lengthy claims is devoted to enumerating types of information and information sources available within the power-grid environment. But merely selecting information, by content or source, for collection, analysis, and display does nothing significant to differentiate a process from ordinary mental processes, whose implicit exclusion from § 101 undergirds the information-based category of abstract ideas."). As discussed *supra* § (III)(A)(2), the Court found that the claimed method of performing targeting advertising was akin to the analogy the Federal Circuit articulated in *Intellectual Ventures*, where said advertising is comparable to "a television channel [] choos[ing] to present a commercial for children's toys during early morning cartoon programs but beer during an evening sporting event." *Intell. Ventures*, 792 F.3d at 1370. The "real time" limitation uses conventional computers in a conventional way to allow for these advertisements to be selected in real time. '440 Patent at 6:56 ("Computer **18** is a conventional personal computer"); *id.* at 11:01-03 ("URL field **74** is a conventional drop-down input box that can be used for entering URLs or path and file names of

locally-stored web pages."); *id.* at 12:55-59 ("A final region of window **24** is a conventional linked icon **88**, which can be used to direct the user's default browser to the home page of the company that provided client software application **10**."). Thus, using conventional computing components to perform the claimed invention in real time is insufficient to supply an inventive concept at *Alice* Step Two. *Telesign Corp. v. Twilio, Inc.*, No. 18-cv-03279-VC, 2018 WL 10638619, at \*2 (N.D. Cal. Oct. 19, 2018), *aff'd*, 789 F. App'x 881 (Fed. Cir. 2020) ("[T]he fact that technology permits a process to occur in real time does not, without more, supply an inventive concept."); *Customedia*, 951 F.3d at 1365-66 (claims directed to a form of targeted advertising that recited "generic computer components, including a programmable receiver unit, a storage device, a remote server and a processor," were "insufficient to render eligible claims directed to an abstract idea" at *Alice* Step Two); *see also Customedia*, 951 F.3d at 1366 ("[T]he invocation of "already-available computers that are not themselves plausibly asserted to be an advance . . . amounts to a recitation of what is well-understood, routine, and conventional." (citation omitted)).

### 4. The Ordered Combination of All Claim Elements Fails to Provide an Inventive Concept

Plaintiff further asserts that the ordered combination of the elements in the Asserted Claims provides an inventive concept. In Plaintiff's view, "the Asserted Claim requires the transfer of software to the user's computer and the use of a unique identifier to identify information sent from that same computer to a server, then selecting an ad based on that information." D.I. 293 at 23. In Plaintiff's view, the combination of all elements "enables the recording of all computer usage information (providing a universal profile)," and "also enables the display of ads from a cache of the selected and preprocessed ads." *Id.* at 24.

Defendant disagrees. Defendant asserts that "there is nothing special about the order of the claim steps." D.I. 247 at 17. Moreover, Defendant faults Plaintiff's expert for describing what

the claims "allow" rather than what they "require." *Id.* Furthermore, Defendant alleges that Plaintiff's argument regarding any inventive concept is merely restating the abstract idea itself, which is insufficient to confer an inventive concept to save the Asserted Claim at *Alice* Step Two. The Court agrees with Defendant.

*First*, Plaintiff did not sufficiently articulate an inventive concept provided by the ordered combination of all claim elements. *Cf. Versata Software, Inc. v. NetBrain Techs., Inc.*, No. 13-676-LPS-CJB, 2015 WL 5768938, at *19 (D. Del. Sept. 30, 2015) ("The Court concludes that Versata had difficulty in articulating the inventive concept in the claim because there is none."). Plaintiff does articulate that "the transferred software enables the recording of all computer usage information (providing a universal profile)" and that the software "enables the display of ads from a cache of the selected and preprocessed ads," which in combination with the computer's unique identifier, "tracks the recorded information sent from the user's computer to the server, which in turn identifies the information used to select the ad, which in turn allows the selected ad to be sent to, and cached at, the specific computer associated with the unique identifier." D.I. 293 at 24. However, as discussed *supra* § (III)(C)(2), the claims do not require that the universal profile be built from all computer usage information. Instead, all the claims require is that "the computer usage information includes data regarding one or more programs run on the computer . . . ." '440 Patent at Claim 1. Thus, Plaintiff's purported inventive concept is "turtles all the way down." *Rapanos v. United States*, 547 U.S. 715, 753 (2006).

Moreover, to the extent Plaintiff attempts to assert an abstract idea from the ordered combination of claim elements, any such inventive concept is merely a restatement of the abstract idea. As discussed *supra* § (III)(A)(2), the Asserted Claim is directed to the abstract idea of providing a form of real-time targeted advertising based on information known about a user.

Plaintiff's statements regarding an inventive concept by virtue of the ordered combination of claim elements does nothing more than restate the abstract idea. *See* D.I. 293 at 24. Importantly, Plaintiff does not refute this, but merely argues that, if the Court adopts such an abstract idea, it would do so in error. D.I. 293 at 28 ("[I]f the Court decides to accept Google's third characterization of the abstract idea as '(two-tiered) real-time, reactive targeting,' then Google failed to provide any Step 1 analysis based on this characterization at all, and the Court should not reach Step 2."). Thus, it is clear from the claim language that any purported inventive concept that Plaintiff claims is provided by the ordered combination of all claim elements is not sufficient to save Claim 25 of the '440 Patent at *Alice* Step Two.

*   *   *

For the foregoing reasons, the Court grants Defendant's First Motion for Summary Judgment (D.I. 246).

### D.    The Court Denies-as-Moot Defendant's Second Motion for Summary Judgment

Since the Court grants Defendant's First Motion for Summary Judgment (D.I. 246), there is no longer any valid asserted claim. Thus, Defendant's Second Motion for Summary Judgment (D.I. 250) is denied-as-moot.

## IV.    CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's First and Second Motions for Summary Judgment (D.I. 259; D.I. 263). The Court GRANTS Defendant's First Motion for Summary Judgment (D.I. 246), and DENIES-AS-MOOT Defendant's Second Motion for Summary Judgment and Motion for Leave (D.I. 250; D.I. 330).

31